Christopher Doubek

2043 Joy View Lane

Henderson, NV 89012

(312) 953-2723

cdoubek@btap.com

UNITED STATES DISTRICT COURT DISTRICT OF NEVADA

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

Plaintiff

v.

Christopher Doubek

Pro Se

Defendant

Case No. 2:22-cv-01279-RFB-VCF_______

Motion to Dismiss

Introduction

Christopher Doubek files this motion to dismiss, asking the Court to dismiss SEC's complaint against me individually because necessary and "indispensable" parties are not named as defendants in the complaint. These parties must be joined to this action as defendant will otherwise be subject inconsistent judgment, additional legal actions and otherwise unable to address the other unjoined parties. SEC has not named multiple additional parties indirectly or directly responsible for the orchestration and execution of the alleged actions in the complaint. These parties include John Hurry, the indirect beneficial owner and majority shareholder of Alpine Securities. James Kelly, an individual engaged directly by John Hurry to manage and carry out his interests relative to Alpine Securities while Mr. Hurry was under a regulatory ban and bar by FINRA. These individuals played a significant role in the alleged actions in the complaint and an effective and fair judgment cannot be rendered in these party's absence. Thus, my motion to join these parties or dismiss should be granted.

Rule 12b under the federal rules of civil procedure provide for the filing of this motion to dismiss based upon the failure to join parties with underlying responsibility for the claimed actions in the complaint.

Rule 19 of the federal rules of civil procedure provide that an unnamed party responsible for the actions claimed in the complaint should be named if;

> joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Further citation of Rule 19;

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> > (A) protective provisions in the judgment;
> >
> > (B) shaping the relief; or
> >
> > (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.
>
> > (c) Pleading the Reasons for Nonjoinder. When asserting a claim for relief, a party must state:
>
> (1) the name, if known, of any person who is required to be joined if feasible but is not joined; and
>
> (2) the reasons for not joining that person.

Statements of facts

This complaint raises from a prior FINRA inquiry, disciplinary hearing and subsequent judgment in March 2022. The FINRA disciplinary proceeding number is 2019061232601. In this hearing FINRA addressed a number of issues including the exact same issues and activity alleged in this complaint. Testimony was head from myself, other former and current officers of Alpine Securities including and especially the

owner of Alpine, John Hurry. FINRA, relying heavily on the testimony provided by these individuals and particularly myself, arrived at a decision to fine and expel Alpine Securities. The hearing panel decision highlighted numerous times the extent to which they concluded that John Hurry himself or through his delegate, James Kelly, controlled, managed and manipulated the day-to-day operations of Alpine regardless of the additional management in place at the firm. Quoting from the 84 page panel decision; "the firm converted and misused customer funds and securities by removing customer securities it improperly deemed "abandoned" and "worthless" and seizing customer securities to cover debits related to excessive and unreasonable fees (causes one and two); the firm engaged in unauthorized trading by moving customers' securities from customer accounts to firm proprietary accounts without customer authorization purportedly to cover outstanding debits and because the firm improperly identified the securities as "worthless," and by moving customers' securities from customer accounts to the firm's abandoned securities accounts without customer authorization because the firm improperly identified the accounts as "abandoned" (cause three)". The panel continued "From May 2017 until August 2018, Alpine Securities' three-person board of directors consisted of Christopher Frankel, Justine Hurry, and Richard Nummi. After August 1, 2018, Alpine Securities replaced its three-person board with a one-person board. Robert Tew served as Alpine Securities' sole director from August through December 2018. From December 2018 through June 2021, Christopher Doubek served as Alpine Securities' sole director. Doubek testified that, as the sole board member, he reported directly to indirect owner John Hurry". Continuing with more direct statements regarding the amount of control exerted on a daily basis, "Doubek testified that John Hurry often threatened him with termination in order to force Doubek to carry out his directives and plans for Alpine Securities." Additionally, "Several former members of Alpine Securities' management team appear to have acrimonious relationships with John Hurry. This is particularly so with respect to Frankel, Jones and Doubek". The panel acknowledged James Kelly's involvement with Hurry in part by saying "Frankel attempted, but failed, to find other ex-clearing relationships for Alpine Securities. The firm retained outside consultant Jim Kelly to assist with finding new exclearing relationships and possible outside funding for the firm. Kelly had no success on either point. He believed he was unsuccessful because Frankel did not appear capable as the firm's chief executive officer and counter-parties lacked confidence in him. Kelly also believed that Frankel wanted to buy Alpine Securities and compete with John Hurry and that the firm's and its affiliates' regulatory history hurt the firm's chances of obtaining outside funding and new exclearing relationships. "Alpine Securities terminated Doubek during a break in the hearing on June 24, 2021. Doubek's Form U5 states that an internal investigation by the firm indicated that Doubek "colluded with a customer to misappropriate in excess of $1.3 million in firm funds" and that he engaged in other actions contrary to the firm's business interests and regulatory responsibilities. Subsequent to Doubek's departure from Alpine Securities, the firm filed a lawsuit against him related to his approval of the firm's payment of an invoice to outside consultant, Jim Kelly, who worked for the firm at John Hurry's request". FINRA acknowledged my state of mind and relayed "We acknowledge that Doubek has an incentive to testify negatively about Alpine Securities. We find, however, that his remarks were measured and consistent with documentary evidence and the testimony of other members of the firm's management team. His testimony appeared forthright and honest and generally was well-corroborated. Overall, we credit his testimony, which included some statements that were against his own personal interests". The panel continued "We credit the consistent testimony from many members of Alpine Securities' management and board regarding John Hurry's controlling involvement in the management of the firm. See Tr. 1095, 1098, 1104-05, 1118, 1123-24 (Tew), 1707-09, 1721-24, 1736-37 (Frankel), 1961-62, 1972-75, 1998-

2000, 2011 (Jones), 2738-39 (Nummi), 2819, 2875-79, 2937-39, 2946-47, 3092-94, 3141-42, 3156-57, 3223 (Doubek). The panel highlighted that this behavior began before 2016 and concluded their findings with "Here, Alpine Securities committed in a July 21, 2016 response to a FINRA cautionary action letter to be prepared to justify its fees and charges. Yet in this case, we find that it charged unreasonable fees after 2016 that it could not justify. The firm even argued that it should not be forced to relate its charges to its actual and specific costs while, at the same time, arguing more generally that its costs justified its fees and charges In July 2016, it committed to maintaining a matrix justifying all of its fees and charges. It did not do this. We find that this too is aggravating." and "Our sanctions must be remedial and designed to deter future misconduct by the respondent and others inclined to behave similarly. We find that, even under new management, there is little reason to believe that anything will change at Alpine Securities. Indeed, the firm issued the September 2021 fee schedule, which includes four monthly fees that total $5,000 and other excessive fees addressed in this decision, after the current chief executive officer took over. While the firm's new chief executive officer has substantial industry credentials, his testimony suggests that he has only scratched the surface of understanding and controlling Alpine Securities. Indeed, the record suggests to us that many key decisions resulting in the misconduct at issue here came from John Hurry, regardless of who served as chief executive officer, and he and his family trusts continue to own the firm**. John Hurry's testimony makes it abundantly clear to us that he believes that Alpine Securities acted properly, and he has demonstrated a willful disinterest in the firm's regulatory responsibilities. An important factor in determining the likelihood that future violations will occur is the degree of intentional wrongdoing evidenced by a respondent's past conduct. Based on our finding that all of Alpine Securities' misconduct in this case was intentional and egregious, and considering the firm's post-Complaint misconduct discussed above, we find that recurrence is highly likely if Alpine Securities remains a FINRA member firm. Accordingly, as discussed below, we find that expulsion is an appropriate sanction and the only alternative for protecting the investing public**."

I believe this FINRA ruling and judgement serves to illuminate the depth of the involvement and control over the operation and management of Alpine which Hurry and Kelly exerted. It is for these reasons I believe these individuals must be included in this case before proceeding.

Conclusion and Prey for Relief

I am requesting this court decide in favor of my motion to dismiss on the grounds that without the inclusion of these necessary and "indispensable" individuals, effective and fair judgment cannot be rendered relative to the remaining defendants, including and especially myself. Thank you for your attention.

All Parties will be served through the CM/ECS system.