Janine C. Prupas, Bar No. 9156
jprupas@swlaw.com
Kelly H. Dove, Bar No. 10569
kdove@swlaw.com
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Telephone: (702) 784-5200
Facsimile: (702) 784-5252

Maranda E. Fritz
maranda@fritzpc.com
Maranda Fritz PC
521 Fifth Avenue
New York, New York 10175
Telephone: 646 584-8231
(Pro Hac Application to be filed)

*Attorneys for Defendant Alpine Securities Corp. and Joseph Walsh*

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775-785-5440

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

ALPINE SECURITIES CORPORATION, CHRISTOPHER DOUBEK, and JOSEPH WALSH,

Defendants.

Case No. 22-cv-1279

**ALPINE SECURITIES CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR TRANSFER OR, IN THE ALTERNATIVE, MOTION TO STAY COLLATERAL FINRA PROCEEDINGS**

## INTRODUCTION

Plaintiff acknowledges, as it must, that its office is in Colorado, that the facts and circumstances of this case occurred in Utah, and that the state of Nevada has no connection to the case. Nonetheless, Plaintiff vigorously opposes this motion, insisting that its choice of forum "weighs heavily" in its favor, and dredges up irrelevant fragments from other litigations in attempts to denigrate Alpine.

Perhaps most striking is that the Plaintiff offers no legitimate basis for the placement of this

case in Nevada. The *only* purported reason for the Nevada filing that the Plaintiff can point to is the notion that it will be more convenient for Chris Doubek. But the SEC did not file in Nevada because they wanted to be considerate to Mr. Doubek. This Court is therefore left with the fact that, though the SEC takes umbrage at the use of the phrase "forum shopping,"[1] it is precisely what's going on: the SEC is seeking to avoid the less favorable law in Alpine's jurisdiction and/or wants to inflict as much expense and business disruption on Alpine as possible.

Whether the SEC is permitted to inflict that pain on this small firm and force its counsel and management to defend a case in Nevada depends on whether this Court is prepared to accept the SEC's problematic "co-conspirator theory" of venue and find that any co-defendant may be forced to defend in any jurisdiction, regardless of its contacts with that jurisdiction, if another defendant happened to move there. That theory defies the most basic notions of due process and the need for some level of contacts with the jurisdiction, but the SEC plainly believes that it is entitled to disregard those time-honored principles. But the theory espoused by the SEC, even if valid, has no application to this circumstance, where venue as to one defendant is based not on his actions in the forum state but on his after-the-fact move to the Nevada. It would apply only where the Complaint sets forth sufficient allegations of conspiracy and that a co-conspirator engaged in violative conduct in furtherance of the conspiracy in the chosen forum. That has not and could not be alleged in this case. The Complaint is devoid of allegations that Alpine or Joseph Walsh reside or transact business in Nevada or that any of the conduct at issue occurred in Nevada; it contains only the claim, which the SEC now concedes is inaccurate, that Alpine is owned by a Nevada entity.

Lacking any argument that there is any relevant connection between Alpine or Mr. Walsh and Nevada, the SEC litters its opposition with references to other litigations, taken entirely out of context, and even attempts to draw John Hurry into these proceedings based on the irrelevant, self-

[1] The SEC's overheated reaction to the clearly presented issue of forum shopping is even more inappropriate given that the SEC candidly acknowledged, in the case that it filed against Alpine in the Southern District of New York, that it selects forums for purely strategic reasons: it claimed that a New York case would get more attention and thereby communicate "guidance" to the entire industry. *SEC v. Alpine Securities Corp.*, Case No. 17-cv-07179-DLC, ECF No. 30 at 3 (S.D.N.Y. Sept. 15, 2017) ("The Commission chose this forum because the injunctive relief requested in this case will guide not only Alpine's future conduct in this forum, but also the conduct of all broker-dealers doing business in the nation's financial center. A judgment from this district will provide direct guidance to the industry.").

Snell & Wilmer L.L.P. LAW OFFICES 50 West Liberty Street, Suite 510 Reno, Nevada 89501 775-785-5440

serving and incredible claims of Alpine's former Chief Executive Officer Chris Doubek. Alpine will not respond in kind: it could, but will not, foist on this Court the abundant testimony and evidence that contradicts Mr. Doubek's claims – because those issues are not relevant to the motion. As the SEC well knows, Mr. Doubek was terminated from his position at Alpine because he engaged in a theft of more than $1.2 million and, since then, has reversed his testimony regarding Alpine and engaged in virtually continuous efforts to do harm to John Hurry. The scattershot assertions that the SEC puts forth are far afield of the issue of whether it has established venue over these particular defendants in Nevada. The fact remains that the relevant events, including Mr. Doubek's conduct that led to this proceeding, occurred at the offices of Alpine in Utah, choice of law considerations favor Utah, and forcing Alpine to litigate this matter in Nevada will result in substantial costs and business disruption.

If this Court declines to transfer this action, Alpine has asked that the Court address the SEC's wasteful effort to use this Court to relitigate issues that are part of the lengthy and ongoing FINRA action. In response, and ironically, this Plaintiff argues that the Court cannot issue a stay that would affect FINRA because it is a third party. But this Plaintiff sought and obtained precisely that relief in a prior case against Alpine. It should not and cannot now claim that such relief is unavailable to Alpine.

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775-785-5440

## ARGUMENT

### I. VENUE IS IMPROPER UNDER SECTION 27(a) OF THE EXCHANGE ACT AND SECTION 22(a) OF THE SECURITIES ACT

Plaintiff insists in its Opposition that if venue exists for any defendant, *e.g.*, the random fact that Mr. Doubek supposedly moved to Nevada, then *all defendants* can be forced to litigate here notwithstanding the absence of contacts with that jurisdiction. Plaintiff's argument is certainly disconcerting because it expressly rejects fundamental jurisdictional concepts of due process and fairness. It also utterly disregards the applicable language of Section 27, instead relying on the 1985 decision in *SEC v. Vigman*, 764 F.2d 1309 (9th Cir. 1985). Memorandum in Opposition to Motion [Doc. 20] ("Opp.Mem.") at 3-4.

Plaintiff at least acknowledges, in understated fashion, that this theory has been "questioned" but contends that "it remains good law" in this Circuit. Opp. Mem. at 4 n.1. The inherent flaws of the "co-conspirator theory of venue" are discussed at length in *SEC v. Johnson,* 650 F.3d 710 (D.C.Cir. 2011). That court first emphasized that the SEC's co-conspirator theory of venue is "a gloss upon and an extension" of the applicable venue provision, §78aa. It also noted the SEC's reliance on the *Vigman* decision but observed that the *Vigman* decision pre-dated relevant Supreme Court authority and so the SEC's reliance on the decision "begs the question" whether the theory is valid.

The *Johnson* court then, in strongest terms, held that the theory is invalid under the plain language of the applicable venue provision which states that a "defendant may only be sued in the 'district wherein the defendant is found or is an inhabitant or transacts business.'"

> We believe §78aa by its terms forecloses use of the co-conspirator theory of venue; a suit simply may not be brought in a forum where there is no statutory basis for venue. We cannot countenance any so-called theory that 'adds a gloss to the operative language of the statute quite different from its commonly accepted meaning.'

*Id*. at 715. *See also* Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] (action may be brought "in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein").

Plaintiff fails to acknowledge that the theory, *even if valid*, is predicated on the commission of violative acts in the forum state. The court in *Vigman* reasoned that, "because neither defendant is found within the Central District of California and it does not appear from the record that they transact, or have ever transacted business within the Central District, we need to determine whether venue is proper based on *whether any act or transaction constituting a violation* occurred in the Central District." (Emphasis added). Only in that context did it look to the applicability of a co-conspirator theory to determine whether an act occurred in the state for which a co-conspirator could be responsible. Thus, even under the reasoning of *Vigman*, the theory is not applicable where, as here, venue is laid in Nevada based on the fact that a defendant happened to move to Nevada after the events at issue – an event not attributable to other defendants. *See Voip-Pal.com, Inc. v. Twitter, Inc.*, 2018 U.S. Dist. LEXIS 122807, at *5-7 (D. Nev. July 23, 2018) (where Defendant

Snell & Wilmer L.L.P. LAW OFFICES 50 West Liberty Street, Suite 510 Reno, Nevada 89501 775-785-5440

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775-785-5440

has "a single employee" in Nevada, and "the decision to live in Nevada was the employee's alone," motion to change venue granted to district that "has substantially greater contacts" with Defendant including contacts out of which litigation arises and that district "has a local interest in deciding controversies pertaining to the businesses and corporations operating within its border").

The court in *Vanleeuwen v. Kayuan Petrochemicals Inc.*, 2013 U.S.Dist. LEXIS 121976 (C.D.Cal. 2013), also made clear the limited applicability of the *Vigman* decision. The court explained that the holding in *Vigman* hinged not on the *residence* of one defendant but rather on the allegation that *the acts* constituting the violation occurred in the district and that, assuming adequate allegations of conspiracy, other defendants could be held accountable for those acts. For that co-conspirator theory to apply, the court confirmed, "there must be at least one act alleged to have occurred in the forum." *Id*. at *22-23 (*citing Wash.Pub.Util.Grp. v. U.S.Dist. Court for the W. Dist. of Washington*, 843 F.2d 319, 328 (9th Cir. 1987) (finding venue pursuant to the co-conspirator venue theory when an alleged violation occurred in the forum); *Semegen v. Weldner*, 780 F.2d 727, 731 (9th Cir. 1985) (finding that co-conspirator venue theory would apply when some of the defendants offered and sold investments in the forum); *Olenicoff v. UBS AG,* 2010 U.S.Dist. Lexis 144474 (C.D.Cal. March 16, 2010) (finding the co-conspirator venue theory applicable when some defendants had undertaken to manage the plaintiff's assets and communicated with plaintiffs through an office in the Central District); *Tolentino v. Mossman*, 2007 U.S. Dist LEXIS 95717 (E.D.Cal. Dec. 13, 2007) (finding the co-conspirator venue theory applicable when one defendant had made communications directly to the plaintiff in the forum).

Notably, the court in *Vanleeuwen* went the further step of holding that the plaintiff must allege that the *particular* defendant "performed an act within the forum," citing *Vigman* for its recognition that "venue is not necessarily established as to all defendants merely because it is established as to some." *Id*. at 18 (citing *Allstar Mktg. Grp., Ltd. Liab. Co. v. Your Store Online, Ltd. Liab. Co.*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009) (in multi-defendant actions, venue must be established as to all defendants). Thus, even under *Vigman*, there must be an act in the chosen forum conferring venue that is "of material importance to the consummation of the scheme." Plaintiff has failed even to allege acts in Nevada and the fact that a former employee moved to

Nevada after he engaged in the conduct at issue in Utah does not establish venue.

After encouraging this Court to join it out on the legal limb of "co-conspirator venue," the Plaintiff then abandons any pretense of adhering to the allegations in its Complaint, conceding that its only pertinent allegation as to Alpine, that it is "owned" by a Nevada entity, was false. Instead, Plaintiff exhumes remnants from other cases and tries to weave them together to support the generic notion that Alpine has some significant relation to Nevada. First, none of its assertions pertain to Mr. Walsh and the lack of venue as to him is clear. Further, with respect to Alpine, it extracts fragments from other cases that do not correspond to the requirements of venue set forth in Sections 27 and 22. Plaintiff claims, for example, that Alpine "has admitted it does business in Nevada," Opp. Mem at 4, citing two wholly irrelevant facts: first, as a brokerage business, Alpine is registered to do business in Nevada and, second, in a litigation involving a proposed transfer of Alpine to various trusts, the Plaintiffs in that case averred that Alpine is engaged in business in "numerous states including Nevada." Opp. Mem. at 5.

Neither claim establishes that Alpine "transacts business" in Nevada within the meaning of the venue provisions. A defendant "transacts business" in a district within the meaning of Section 27 only when, among other things, its activities within the district constitute a "substantial part" of its "ordinary business." *Gilson v. Pittsburgh Forgings Co*., 284 F. Supp. 569, 570 (S.D.N.Y. 1968) (citing *United Industrial Corp. v. Nuclear Corp. of America*, 237 F. Supp. 971, 978 (Del. 1964)). See also *Hodgdon v. Needham-Skyles Oil Co*., 556 F. Supp. 75, 78 (1982) (citing *SEC v. National Student Marketing Corp*., 360 F. Supp. 284, 292 (D.D.C. 1973); *Prousalis v. Van Krevel*, No. 81-2257., 1982 U.S. Dist. LEXIS 10738, at *3-4 (Jan. 15, 1982)) (to satisfy the venue criteria, "the activity must constitute a substantial part of its ordinary business and must be continuous and of some duration"). Plaintiff's reference to generic assertions that Alpine "does business" in various states does not satisfy the requirement for venue that Alpine "transacts business" in Nevada.

Plaintiff also focuses on John Hurry but Mr. Hurry is not a defendant nor is he the owner of Alpine -- a Utah corporation owned by an Arizona entity. Plaintiff apparently wants to establish a theory of venue by virtue of who owns or allegedly "controls" an entity, arguing that "public filings confirm Mr. Hurry's effective ownership and control over Alpine's parent company and through it

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775-785-5440

Alpine." Opp.Mem. at 6. Plaintiff claims that Mr. Hurry is the "beneficial owner of Alpine" and that, therefore, the business can be forced to defend in Nevada. Opp.Mem. at 5. Plaintiff claims that Mr. Hurry is a member/manager of SCA Clearing LLC in Arizona and so venue is proper over Alpine and Joseph Walsh. Opp.Mem. at 7. Worse, Plaintiff invites this Court to rely on the statements of Mr. Doubek to buttress its determined effort to litigate in Nevada, actually repeating and relying on Mr. Doubek's tired, baseless and irrelevant arguments that Mr. Hurry directed the violative conduct in which Mr. Doubek engaged.

None of these contentions is found in the Complaint, none is relevant to whether venue exists over *these particular defendants*, and many are not accurate or credible. For example, while Plaintiff sprinkles claims of Mr. Doubek throughout its opposition, it conveniently ignores the fact that, throughout the period at issue, Mr. Hurry was subject to an order issued by the Plaintiff stating that Mr. Hurry could not manage "day to day" affairs of Alpine. In fact, Plaintiff fails to note in its Opposition to Alpine's motion what it points out in its opposition to Mr. Doubek's motion: that Mr. Doubek also claims that James Kelly should be included in this lawsuit because Mr. Hurry supposedly ceded control of Alpine to him while he was subject to the stay. Opp.Mem. to Doubek Motion at 1-2. Suffice to say, Mr. Doubek's self-serving, inconsistent and demonstrably false claims should not be put forth by the SEC as credible evidence, and they provide no support for the filing of the litigation in Nevada.

Those scraps of information do not address or satisfy the standard that applies to the situs of a securities fraud case. They do not satisfy the applicable standard for "transacting business" under Sections 27(a) or 22 (a). And fortunately, no theory of jurisdiction holds that because a "beneficial owner" of a business lives in Nevada – or California or New York for that matter – that the business itself is an "inhabitant of" of "transacts business" where an owner supposedly lives. *See Delarosa v. State St. Corp.*, 2017 U.S.Dist. LEXIS 217646 (C.D.Cal. 2017) (where defendant has a subsidiary in the chosen forum, it is "insufficient to establish that State Street resides in this district" and venue is not proper).

Because Plaintiff has failed to establish a basis for venue under Section 1406(a) in relation to Alpine or Joseph Walsh, this case is subject to dismissal under Rule 12(b)(3). *Baluma v. Huang*,

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775-785-5440

2021 U.S. Dist. LEXIS 119308, at *4 (D. Nev. Mar. 19, 2021) (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)).

## II. TRANSFER TO THE DISTRICT OF UTAH UNDER 28 USC § 1404 IS APPROPRIATE

Plaintiff does not dispute that this case could have been brought in the District of Utah. As succinctly stated in *Delarosa*, venue is proper there because "each Defendant either resides in [that state] or worked and performed business for State Street in [that state] during the relevant time frame" and the acts constituting the alleged violations occurred there. *Delarosa,* 2017 U.S. Dist LEXIS at *15-16.

Turning to the factors pertaining to transfer of venue, Plaintiff begins with an oddly truncated reference to those factors. Opp.Mem. at 7. Plaintiff fails to acknowledge that the oft-cited *Jones* factors begin with two of the issues that favor transfer to Utah: "(1) the location where the relevant agreements were negotiated and executed, [and] (2) the state that is most familiar with the governing law." *Bondali*, 2013 U.S.Dist.LEXIS at *10; *Delarosa*, 2017 U.S.Dist. LEXIS 217646 at *6 (C.D.Cal. 2017). *Msaa Holdings v. Heller*, 2019 U.S. Dist. LEXIS 228611, at *7 (D. Nev. Aug. 29, 2019) (citations omitted). The plaintiff instead presses the assertion that its choice of forum "weigh[s] heavily in favor of not transferring this case." Opp.Mem. at 8. Plaintiff again seizes on Ninth Circuit authority discussing the "deference" that applies to a plaintiff's choice of forum but in the process it distorts the applicability and purpose of such deference: deference is not meant to allow plaintiffs the unrestricted ability to forum shop, rather the purpose for giving weight to a plaintiff's choice of forum is "that when a plaintiff has had business transactions with the defendant through which the defendant has injured him, the plaintiff should not be forced to follow the defendant into the defendant's home district." *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968). This is not the case here where the SEC, through its Denver office, is attempting to drag *all parties* away from the "center of gravity" of the issues and to a forum where it believes it has a strategic advantage.

Nor is any significant deference afforded to plaintiff's choice where, as here, the "plaintiff does not reside in the chosen forum," the operative facts giving rise to the litigation did not occur

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775-785-5440

in the forum state, and the forum "has no interest in the parties or subject matter." Under those circumstances, "plaintiff's choice is entitled to only minimal consideration". *Bondali v. Yum! Brands Inc.,* 2013 U.S.Dist.LEXIS 196916 *13-14 (C.D.Cal. 2013).

> If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration.

*Pac.Car.*, 403 F.2d at 954.

Reduced consideration for the plaintiff's choice of forum is particularly appropriate where the plaintiff can articulate no legitimate factor supporting its choice. Here, the Plaintiff decries Alpine's observation of the seemingly obvious fact that it filed suit in Nevada, at a distance from its own location and from Alpine, because it perceives an advantage to itself and/or an increased burden on Alpine. Its response certainly does not contradict that assertion: Plaintiff cites as the "legitimate" reason for filing in Nevada the convenience of Mr. Doubek but that circumstance is obviously Plaintiff's *excuse* for doing so as opposed to a legitimate reason. It did not choose this venue to aid and assist Mr. Doubek. Plaintiff's choice of forum in this case is, therefore, entitled to minimal consideration.

### 1. The Governing Law in the Relevant Agreements Is Utah

The gravamen of the SEC's claim hinges on the agreement between Alpine and its customers. Plaintiff claims that Alpine engaged in actions that were "unauthorized" by the customer; the parameters of that authorization are found within the documents that Alpine's customers signed, and they all contain the provision that they are governed by the laws of the state of Utah.

Plaintiff grudgingly acknowledges that Alpine's customer agreement are governed by the law of Utah but argues that, even if the terms of those agreements "may be relevant," the provisions of an agreement made in Utah and governed by Utah law "do not require any interpretation of Utah law." Opp. Mem. at 15. Plaintiff states no basis for that seemingly counterintuitive claim and it seems at the least premature for the Plaintiff to purport to tell the Court, at this juncture, that the agreements do not require application of Utah law.

Because the SEC's claims will require interpretation and application of the terms of these

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775-785-5440

contracts, consideration of the governing law favors transfer to Utah.

**2. The Location of Documents and Witnesses and Differences in the Cost of Litigation**

In an effort to counter the fact that Alpine is located in Utah and that its officers and employees will be witnesses, Plaintiff falls back again on the idea that it can mischaracterize the cherry-picked circumstances of a prior case and seek to use that to bolster its claim. Opp.Mem. at 12. Plaintiff is correct that this same Denver office of the SEC has previously sued Alpine in the Southern District of New York, and Alpine sought to transfer the case to Utah. Fritz Reply Dec. at 5. It is worth noting, first, that the SEC in that case sought to satisfy the relevant venue provision instead of ignoring it. *Id.* It argued that Alpine "transacts business" in New York based on a very specific but esoteric fact: *all* Alpine trades are ultimately cleared through the Depository Trust Corporation which was then located in New York City. *Id.* Having pointed to that as the statutory basis for venue, it then sought to justify its choice of forum through another very specific claim, arguing that it chose New York was the forum not because it bore any relationship to the case but because it wanted as much attention as possible for its case of "first impression" to loudly communicate "guidance" to the industry regarding the filing of SARs.[2] Thus, at least the Denver office of the SEC in that case was frank about the fact that it had "shopped" for a forum for strategic reasons. And the district court, embracing the SEC's desire to gain maximum publicity through a New York proceeding, rejected the fact that no actual witnesses were in New York. Fritz Reply Dec. at 6. Alpine did not agree with that decision but more importantly it has no application to this case where the SEC has failed to meet its initial burden of showing that venue lies in Nevada in relation to Alpine and Mr. Walsh. *Id.*

On the issue of the location of documents and witnesses, Plaintiff admits that its case is based on "the record developed in the FINRA proceedings" and attempts to use that fact to claims that the location of documents is not significant. Opp. Mem. at 14 n.16. But Plaintiff then ignores all of the procedures that occurred in that FINRA case including the fact that the testimony was

[2] Fritz Reply Dec. at 6. The SEC also used the claim that it intended to call witnesses who were at the Department of Homeland Security in New York. It did not.

Snell & Wilmer L.L.P. LAW OFFICES 50 West Liberty Street, Suite 510 Reno, Nevada 89501 775-785-5440

taken by FINRA *at Alpine's offices in Utah*, depositions of employees were conducted *from Alpine's offices in Utah*, and the hearing *was set and commenced in Utah.* Fritz Reply Dec. at 2. Here too, depositions of Alpine employees will occur at Alpine. *Id.* And Alpine's management, including its financial and operational staff, will be required to attend and to participate in the proceeding, which would result in substantial costs and business disruption[3] that the authorities confirm are factors that the court must consider. *Hong v. Rec. Equip., Inc.*, 2019 U.S. Dist. LEXIS 185371, at *15 (W.D. Wash. Oct. 25, 2019). *See Pedigo Prods. v. Kimberly-Clark Worldwide, Inc.*, 2013 U.S. Dist. LEXIS 12690, at *9 (W.D. Wash. Jan. 30, 2013) (finding that transfer was appropriate under 28 U.S.C. § 1404(a) in part because "the disruption of business affairs due to the time and cost of distant litigation [was] far more severe and detrimental to a small company than it [was] to a much larger corporation.").[4]

Plaintiff also presumes to question Alpine's references to the employee witnesses that will be involved in the case. But again, the FINRA case on which Plaintiff relies reflects that Alpine's operational personnel will have to provide evidence concerning the precise movements of stock and the reasons for those transfers. Fritz Reply Dec. at 3. In fact, one of those employees, Jana Losser, is the individual who works directly with states in complying with state escheatment laws that relate to the treatment of abandoned accounts. Fritz Reply Dec. at 4. And in this case, *as in the FINRA case*, Alpine's financial staff will have to testify concerning the manner in which those transfers are recorded in the books and records of the firm, particularly since certain of the allegedly unauthorized trades involved no impact on or interference with the ownership of the customer. *Id.* In this case, *as in the FINRA case*, former employees like Robert Tew will be called to testify as well as Alpine's current chief executive officer, Raymond Maratea, and its current management will have to travel to Nevada to oversee the proceedings and consult with counsel. *Id.* As for the issue of the convenience of the SEC, it agrees that the factor is "neutral." Opp. Mem. 10 n.13.

[3] Fritz Reply Dec. at 7.

[4] Alpine's financial constraints are well known to the Plaintiff. The Plaintiff during the past year obtained payment from Alpine of a $12 million fine and Alpine within the last two weeks has had to file an emergency application with Plaintiff because the National Security Clearing Corporation, a subsidiary of DTC, suddenly imposed a $2.1 million "backcharge" in relation to trading that occurred in September. As Alpine has made clear to the plaintiff, the costs associated with microcap trading have increased dramatically and the associated "deposits" required by NSCC to conduct those trades has reduced its ability to trade and severely impacted its business. Fritz Reply Dec. at 8.





Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775-785-5440

Plaintiff's amalgamation of bits from unrelated and irrelevant proceedings appears designed to obfuscate rather than address the issues that pertain to venue. It remains clear that the loci of relevant events, the offices of the critical witnesses and participants, the situs of negotiation of the contracts and the law that governs them, and the expense of litigating in a state whether *none* of the parties are officed or reside outweigh any consideration to the Plaintiff's choice of forum.

## II. IN THE ALTERNATIVE, THE COURT SHOULD DISMISS OR STAY THE PROSECUTION OF DUPLICATIVE AND PUNITIVE REGULATORY PROCEEDINGS

The SEC claims, first, that the proceedings are not "duplicative." As supposed support for that assertion, it points to the fact that the FINRA proceeding included other claims in addition to the core claims concerning these same movements of securities. That is correct. This proceeding duplicates a critical part, but not all, of FINRA's claims. As the SEC now admits, its case is not on its own investigation but rather on *the record* of the FINRA proceeding.[5]

Plaintiff also falls back on the claim that the proceedings are not duplicative because FINRA and the SEC have different roles and dual enforcement is "not unusual." Plaintiff claims it is the SEC that is charged with the "administration and enforcement of the federal securities laws," citing to a decision from 1967, while FINRA deals with disciplinary matters. Opp. Mem. at 16. While that was once the case, FINRA since its formation in 2007 has aggressively taken on itself the mission of enforcing the federal securities laws based on the claim that it any violation of those securities laws also constitutes a violation of FINRA's rules of conduct. See, e.g., *FINRA Department of Enforcement v. Scottsdale Capital Advisors, et al.*, Disciplinary Proceeding No. 2014041724601 (2015) (asserting violations of Section 5 of the Securities Exchange Act). At this point, both agencies are engaged in the enforcement of the federal securities laws and they are components of an intertwined enforcement mechanism that used to, but no longer does, divide their

[5] The SEC points to the fact that the FINRA proceeding included other claims in addition to the core claims concerning these same movements of securities. That is correct. This proceeding duplicates a critical part, but not all, of FINRA's claims.
Plaintiff also argues that the decision in Jones v. SEC, 115 F.3d 1173 (4th Cir. 1997) supports the continuation of duplicative proceedings. Notably, Plaintiff fails to acknowledge that the Court in Jones was unquestionably concerned about the SEC's use of the federal courts to duplicate a FINRA action. And it ignores the fact that the SEC assured that court that it had a policy against such duplication – a policy that would unquestionably be violated by this proceeding. The court in *Jones*, notwithstanding its concerns, relied on that assurance from the SEC in allowing the case to proceed. Here, the SEC provides no response on the issue.





Snell & Wilmer L.L.P. LAW OFFICES 50 West Liberty Street, Suite 510 Reno, Nevada 89501 775-785-5440

authority between disciplinary matters and enforcement of the securities laws. They are more like a parent and a subsidiary which certainly could not both sue the same defendant for the same alleged wrongful conduct.

Perhaps more importantly, a critical underpinning of the *Jones* decision, that FINRA is a private entity and may therefore act without adherence to the Constitution, is no longer valid. As the Plaintiff points out, Alpine has filed a federal action based on clear and developing precedents concerning the failure of government agencies and regulatory entities to adhere to Constitutional principles of separation of powers. Here too, Alpine is asserting that the Constitution, and its prohibition against double jeopardy, are implicated by the pursuit of duplicative and punitive actions by both FINRA and the SEC and should be reconsidered in light of the pronouncements in, for example, *Lucia v. SEC*, 138 S. Ct. 2044 (2018)*; Kokesh v. SEC*, 137 S. Ct. 1635 (2017) and *Saad v. SEC*, 873 F.3d 297 (D.C. Cir. 2017). Under the reasoning of those decisions, FINRA should now be considered a governmental actor, the sanctions should be found to be punitive and this Court should address whether the prosecution of both actions violates the protection against double jeopardy.

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775-785-5440

**CONCLUSION AND RELIEF REQUESTED.**

Based on the foregoing, Alpine requests that the Court transfer this case to the District Court of Utah pursuant to 28 U.S.C. §§ 1404(a). If this Court continues the case in Nevada, Alpine requests that it stay the administrative proceeding while this action, which reflects the views of Alpine's primary regulator and will be conducted in accordance with Constitutional protections, continues.

Dated: November 8, 2022

SNELL & WILMER L.L.P.

By: */s/ Jacey Prupas*

Janine C. Prupas, No. 9156
Kelly H. Dove, Bar No. 10569
50 West Liberty Street, Suite 510
Reno, Nevada 89501

Maranda E. Fritz
maranda@fritzpc.com
Maranda Fritz PC
521 Fifth Avenue
New York, New York 10175
Telephone: 646 584-8231
(Pro Hac Application to be filed)

*Attorneys for Defendant Alpine Securities Corporation and Joseph Walsh*

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775-785-5440

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775-785-5440

**CERTIFICATE OF SERVICE**

I, the undersigned, declare under penalty of perjury, that I am over the age of eighteen (18) years, and I am not a party to, nor interested in, this action. On this date, I caused to be served a true and correct copy of the foregoing **ALPINE SECURITIES CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR TRANSFER, OR, IN THE ALTERNATIVE, MOTION TO STAY COLLATERAL FINRA PROCEEDINGS** by the method indicated:

| | |
|---|---|
| XXXXXXX | by Court's CM/ECF Program |
| ___________ | by U. S. Mail |
| ___________ | by Facsimile Transmission |
| ___________ | by Overnight Mail |
| ___________ | by Federal Express |
| ___________ | by Electronic Service |
| ___________ | by Hand Delivery |

Dated this 8th day of November, 2022

By: *_/s/ Vicki Quarve_*
An employee of Snell & Wilmer L.L.P.