Maranda E. Fritz (Pro Hac Vice)
Maranda Fritz PC
521 Fifth Avenue
New York, New York 10175
maranda@fritzpc.com
Telephone: (646) 584-8231

Joseph C. Reynolds (Nev. Bar No. 8630)
Ramez A. Ghally (Nev. Bar No. 15225)
Hutchison & Steffen, PLLC
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
jreynolds@hutchlegal.com
rghally@hutchlegal.com
Telephone: (702) 385-2500

*Attorneys for Defendants Alpine Securities Corp. and Joseph Walsh*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ALPINE SECURITIES CORPORATION, CHRISTOPHER DOUBEK, and JOSEPH WALSH,<br><br>Defendants. | Case No. 22-cv-1279 |

**OPPOSITION TO DEFENDANT DOUBEK'S SECOND MOTION TO DISMISS**

Defendants Alpine Securities Corporation and Joseph Walsh (hereinafter collectively "Alpine") submit this opposition to the Second Motion to Dismiss filed by defendant Doubek on May 14, 2025 (Doubek Second Motion to Dismiss, ECF No. 103). Defendant Doubek filed his First Motion to Dismiss on October 18, 2022 (ECF No. 17) and it was denied by this Court on August 15, 2023 (ECF No. 39). Defendant Doubek again, in this most recent motion, claims that

there is some sort of "injustice" occurring by virtue of the fact that he is charged by the SEC with improper movements of stock during the period when he was CEO of Alpine in May and June 2020. He persists in arguing that he is somehow not responsible for his own actions and directives as CEO because, he claims, he was directed or coerced to take those actions by either or both John Hurry and James Kelly.

Notably, this individual who claims that he is the victim of "injustice" then proceeded to engage, with James Kelly, in an outright theft from Alpine of more than $1.3 million for which he has yet to suffer *any* regulatory or criminal consequence.

Defendant Doubek's adamant refusal to take responsibility for his own actions fails in three respects. First, this Court has previously considered and rejected defendant Doubek's claim that he is being subjected to an injustice. The Court, in denying that motion, tried to explain to defendant Doubek that the allegations as to his own individual conduct were more than sufficient to state a claim and that defendant Doubek's insistence that he was "told" to engage in the wrongful conduct did not alter the fact of his own liability. As the Court confirmed, the defendant *is* responsible for the actions that he took while CEO, *regardless of whether someone else directed him to take those actions.* Defendant Doubek's current purported motion provides no proper basis for reconsideration of that prior ruling.

The Court also advised defendant Doubek that his fervent desire to have other individuals added to the proceeding did not constitute a proper or actionable request to the Court.

Further, the defendant's claims that he was told to engage in those actions is, at least with respect to John Hurry, a fiction. While defendant Doubek reiterates what can only be described as a bombastic rant against Mr. Hurry, continuously employing shrill claims that he was "told to" engage in the movements of stock at issue, even his own testimony confirms that those assertions are false. When pressed on the issue during testimony, the defendant confirmed the plain facts: he

was told by Mr. Hurry to deal with closure of orphaned and abandoned accounts with the understanding that he would do so through one of the various *compliant* means that allowed for those account closures. He was *not told* to ignore applicable regulations and move the stock *without* proper notice to the customer or adherence to the firm's own policies. When asked whether anybody ever directed him to cause the movement of securities valued between $400 and $1500 into a worthless securities account without notifying customers, defendant Doubek stated, "In those specific words? No." See ECF No. 90 and 2-5, 14, 17, 21-22. He was again specifically asked whether anyone told him to "move securities to the worthless securities account without giving customers any advance notice," and again he admitted, "No, no one ever said that." Id at Doubek Dep., Apr. 25, 2024, at 146:3–7. The falsity of his contentions became even more evident as he confirmed what was actually said to him, admitting that neither Mike Cruz nor John Hurry ever directed the method of closure or specifically suggested transferring customer stock without notice. Instead, he was told by Mr. Hurry, who was fully aware that the closures could be done compliantly, things like "Get it done." *Id.* at Doubek Dep., Apr. 26, 2024, at 339:17-340:5. Thus, it was defendant Doubek who decided to affect the movements of stock at issue in an improper way; in the process, *he* provided the basis on which FINRA argued for expulsion and tried to close Alpine.

Not only was defendant Doubek *not* given the direction to move stock without notice, he was told the opposite: Even defendant Doubek admits that he was told to run the firm ***compliantly.*** He violated that fundamental directive because, over the course of eight months, he failed to accomplish the account closures in a compliant fashion and, by May of 2022, believed that he would be fired for failing to do so. As discussed in Alpine's motion for summary judgment, the actions that he engaged in at that point were contrary to the instructions and authorization that he had received, were conducted *for his own benefit* and to the enormous detriment of the firm, and constitute rogue actions not attributable to Alpine. *Alpine's* conduct and intent is instead evidenced

by the fact that, when Alpine's counsel and ownership became aware of defendant Doubek's actions, counsel sent a communication to the defendant questioning whether he had followed proper procedures. (ECF No. 87 at ¶¶ 26-27). In the wake of that communication from Alpine's counsel, and realizing that defendant Doubek did *not* have authorization to direct those stock movements, Mr. Walsh on June 27 and June 28 reversed all of the movements of stock to the internal firm escheatment accounts. *Id.*

The obvious and painful irony of defendant Doubek's diatribes is the fact that *he* was the one, single handedly and without consultation with Alpine's ownership or counsel, who devised and implemented the actions that have caused so much damage to the firm and form the basis for the expulsion order. He was provided with simple and proper directions: deal with dormant and orphaned accounts that continued to generate expense and risk for Alpine. And the circumstances were such that there were at least two legitimate and appropriate means by which to affect those closures. It was Mr. Doubek who failed either to understand or adopt those procedures and opted instead to take abrupt and improper actions that form the basis for this case. Mr. Hurry, who has been in the industry for more than 30 years and has no disclosures on his securities license, did not and would not have directed or allowed management to do something so improper. It was defendant Doubek who inexplicably but plainly failed to comply with applicable regulations but who now howls that he is being treated unfairly.

And defendant Doubek is a far cry from a reliable or credible narrator of events. He has changed his story, recasting the purported villain of this piece when it suits his purpose. *See* ECF No. 90 at 2-5. After being terminated from Alpine in the wake of the theft of $1.2 million, defendant Doubek directed his rage and self-serving diatribes against Mr. Hurry. By the time this case was brought by the SEC, he apparently had a falling out with his former accomplice, Mr. Kelly, and changed his tune, instead arguing to this Court that it was *Mr. Kelly* who coerced him into engaging

in wrongful conduct.

Defendant Doubek adds to his prior refrains of "escalating injustice" and "miscarriage of justice" and "grave inequity" the notion that decisions issued in other cases provide support for his relentless disparagement of Mr. Hurry. As an initial matter, only one of those decisions even relates to this proceeding. There has now been a decision issued by FINRA's National Adjudicatory Council ("NAC") in relation to the appeal from the 2022 Hearing Panel Decision in the underlying FINRA case. But that decision provides no support for defendant Doubek's claims. First, that NAC decision *did not* affirm the findings of the Hearing Panel that defendant has previously relied on. Thus, his contentions regarding Mr. Hurry are undermined by the NAC decision. Turning to the findings contained in the NAC decision, it plainly and properly finds that it was defendant Doubek who directed the movements of stock at issue. The NAC certainly did not find that Mr. Hurry directed or was responsible for those stock movements.

Defendant Doubek points to three other issuances dating back years and addressing unrelated businesses and conduct. Defendant Doubek improperly cites a Nevada decision that does nothing but reference and quote the FINRA Hearing Panel decision *that has now been abrogated* by the decision of the NAC.

Defendant Doubek refers also to a Notice of Termination issued by Hyundai Motors in relation to a Glendale, California car dealership. Again, that document is based on the earlier FINRA Hearing Panel Decision that has been supplanted and vitiated by the decision of the NAC. It also consists of nothing but assertions of Hyundai that were thereafter resolved; the dealership was never terminated and Mr. Hurry was permitted to take operational control and ultimately sold the dealership. Those extra-record issuances are neither admissible nor relevant to this proceeding. They do not constitute a basis for reconsideration of this Court's prior ruling and defendant Doubek's references to those proceedings should be stricken from the record.

**CONCLUSION**

Based on the foregoing, Alpine requests that the Court deny defendant Doubek's Second Motion to Dismiss and/or application for reconsideration of his motion to dismiss and strike his references to materials not properly authenticated or admissible and not contained in the record or relevant to this action.

Dated: May 27, 2025.

By: *__/s/ Joseph C. Reynolds__*
Maranda E. Fritz (Pro Hac Vice)
Maranda Fritz PC
521 Fifth Avenue
New York, New York 10175
maranda@fritzpc.com
Telephone: (646) 584-8231

Joseph C. Reynolds (Nev. Bar No. 8630)
Ramez A. Ghally (Nev. Bar No. 15225)
Hutchison & Steffen, PLLC
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
jreynolds@hutchlegal.com
rghally@hutchlegal.com
Telephone: (702) 385-2500

*Attorneys for Defendants Alpine Securities Corporation and Joseph Walsh*

**CERTIFICATE OF SERVICE**

I, the undersigned, declare under penalty of perjury, that I am over the age of eighteen (18) years, and I am not a party to, nor interested in, this action. On this date, I caused to be served a true and correct copy of the foregoing OPPOSITION TO DEFENDANT DOUBEK'S SECOND MOTION TO DISMISS by the method indicated:

XXXXXXX by Court's CM/ECF Program

___________ by U. S. Mail

___________ by Facsimile Transmission

___________ by Overnight Mail

___________ by Federal Express

___________ by Electronic Service

___________ by Hand Delivery

Dated: May 27, 2025.

By: *_/s/ Madelyn B. Carnate-Peralta_*
An employee of Hutchison & Steffen, PLLC